FILED
JAMES BONINI
CLERK
3
2011 JUN 20 P 2 33

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Charles R. Ogle
11575 Donaldson Road
Rockbridge, Ohio 43149

and

Melanie A. Ogle
11575 Donaldson Road
Rockbridge, Ohio 43149

      Plaintiffs,

vs.

BAC Home Loans Servicing, L.P.,
fka, Countrywide Home Loans Servicing, L.P.
c/o CT Corporation Systems, statutory agent
1300 East Ninth Street
Cleveland, Ohio 44114

Bank of America Corporation
c/o CT Corporation Systems, statutory agent
1300 East Ninth Street
Cleveland, Ohio 44114

America's Wholesale Lender
c/o Countrywide Home Loans, Inc., statutory agent
4500 Park Granada, CH-11
Calabasas, California 91302

Countrywide Home Loans, Inc.
c/o CT Corporation Systems, statutory agent
1300 East Ninth Street
Cleveland, Ohio 44114

Sandra Williams, individually, and in her capacity as
an employee of Bank of America
16001 Dallas Parkway
Addison, Texas 75001-3311

Case No.

# 2:11 CV 540

## JUDGE GRAHAM

## MAGISTRATE JUDGE KEMP

**COMPLAINT**

Jury Demand Endorsed Hereon

1

Sophia L. Cummings, individually, and in her capacity as
an employee of Bank of America
11809 Avery Lane                                              :
Balch Springs, Texas 75180-1361

                                                              :

Diana DeAvila, individually, and in her capacity as
an employee of Bank of America                               :
450 American Way
Simi Valley, California 93065                                :


Chester Levings, individually, and in his capacity as
an employee of Bank of America                               :
450 American Way
Simi Valley, California 93065

                                                              :

Mortgage Electronic Registration Systems, Inc.
c/o CT Corporation Systems, statutory agent                  :
1300 East Ninth Street
Cleveland, Ohio 44114                                        :


MERSCORP, Inc.                                               :
1595 Spring Hill Road
Vienna, Virginia 22182                                       :


Carlisle, McNellie, Rini, Kramer & Ulrich Co., L.P.A.:
c/o William T. Rini, statutory agent
24755 Chagrin Boulevard, Suite 200                           :
Beechwood, Ohio 44122

                                                              :

CoreLogic Document Solutions,
aka First American Document Solutions                        :
450 E. Boundary Street
Chapin, South Carolina 29036                                 :


CoreLogic Services, LLC                                      :
c/o CSC Lawyers Incorporating Service
50 W. Broad Street, Suite 1800
Columbus, Ohio 43215                                         :


# I. INTRODUCTION

1.       Plaintiffs Charles R. Ogle and Melanie A. Ogle allege as follows:

2.      This case arises from interstate racketeering, fraud, corruption and conspiracy perpetrated by Defendants to illegally demand and receive funds from Plaintiff Charles R. Ogle, which was uncovered by Plaintiffs as a result of a request by Charles R. Ogle to Defendant BAC Home Loans Servicing, LP, who demanded mortgage payments of him on behalf of an elusive "noteholder"; and the false and fraudulent documents collectively masterminded and executed by Defendants and filed with the Hocking County Recorder and Hocking County Common Pleas Court in an attempt to undermine the justice system and defraud Plaintiffs of their home and farm business that followed Charles R. Ogle's unfulfilled request to identify the elusive "noteholder".

## II. THE PARTIES

### Plaintiffs

3.      Plaintiffs incorporate by reference each of the preceding paragraphs as if fully restated herein.

4.      Plaintiffs Charles R. Ogle and Melanie A. Ogle state that at all relevant times herein they are a married couple and natural persons, who have been and continue to be residents of Hocking County, Ohio, residing at 11575 Donaldson Road, Rockbridge, Ohio, hereinafter referred to collectively as "Ogles". The Ogles are the preceding deedholders of 87.795 acres of real property located in Section 26, Good Hope Township, Hocking County, Ohio, made up of two previously separated (5 acres with residence and agricultural buildings and 82.795 vacant acres) contiguous parcels of property and the same is their rural home of 20 years. The Ogles are "borrowers" as defined by the Real Estate Settlement Procedures Act ("RESPA"), and "consumers" as defined by

3

the Fair Debt Collection Practices Act ("FDCPA") and the Ohio Consumer Sales Practices Act ("CSPA").

**Defendants**

5.      Defendant BAC Home Loans Servicing, L.P., fka, Countrywide Home Loans Servicing, L.P., c/o CT Corporation Systems, statutory agent, 1300 East Ninth Street, Cleveland, Ohio 44114, is a Texas Limited Partnership, registered to do business in the State of Ohio, its principal place of business is located at  4500 Park Granada, Calabasas, California 91302, and it is a subsidiary of Defendant Bank of America Corporation, c/o CT Corporation Systems, statutory agent, 1300 East Ninth Street, Cleveland, Ohio 44114, a Delaware corporation, registered to do business in the State of Ohio, whose principal place of business located at 100 North Tryon Street, Charlotte, North Carolina 28202, collectively hereinafter referred to as "BAC".  BAC is a "servicer" as defined by RESPA, a "debt collector" as defined by the FDCPA, and a "supplier" as defined by CSPA.

6.      Defendant America's Wholesale Lender ("AWL"), c/o Countrywide Home Loans, statutory agent, 4500 Park Granada, CH-11, Calabasa, California 91302, is a New York corporation registered to do business in the State of Ohio and is a fictitious name for Defendant Countrywide Home Loans, Inc., c/o CT Corporation Systems, statutory agent, 1300 East Ninth Street, Cleveland, Ohio 44114, which is a Delaware corporation, registered to do business in the State of Ohio, whose principal place of business located in 4500 Park Granada, Calabasa, California 91302, collectively hereinafter referred to as "CW".

7.      Defendant Sandra Williams, an employee of BAC, employed at its location of 16001 Dallas

4

Parkway, Addison, Texas 75001-3311, is being sued in her capacity as an employee of BAC and individually.

8.      Defendant Sophia L. Cummings, a Notary Public in the State of Texas, an employee of BAC, employed at its location of 16001 Dallas Parkway, Addison, Texas 75001-3311, is being sued in her capacity as an employee of BAC and individually.

9.      Defendant Sandra Williams, an employee of BAC, employed at its location of 16001 Dallas Parkway, Addison, Texas 75001-3311, is being sued in her in her capacity as an employee of BAC and individually.

10.      Defendant Diana DeAvila, an employee of BAC, employed at its location in Ventura County, California, is being sued in her capacity as an employee of BAC and individually.

11.      Defendant Chester Levings, an employee of BAC, employed at its location in Ventura County, California, is being sued in his capacity as an employee of BAC and individually.

12.      Defendant MERSCORP, Inc. is a Delaware corporation not registered to do business in the State of Ohio, with its principal place of business located at 1595 Spring Hill Road, Suite 310, Vienna, Virginia 22182, and is the parent company for Defendant Mortgage Electronic Registration Systems, Inc., c/o CT Corporation Systems, statutory agent, 1300 East Ninth Street, Cleveland, Ohio 44114, which is a Delaware corporation registered to do business in the State of Ohio, with its principal place of business located at 1818 Library Street, Suite 300, Reston, Virginia 20190,

collectively hereinafter referred to as "MERS".

13.     Defendant Carlisle, McNellie, Rini, Kramer & Ulrich Co., L.P.A., c/o William T. Rini, statutory agent, 24755 Chagrin Boulevard, Suite 200, Beechwood, Ohio 44122, is an Ohio professional corporation registered to do business in the State of Ohio, with its principal place of business located at 24755 Chagrin Boulevard, Suite 200, Cleveland, Ohio 44122, hereinafter referred to as "Carlisle".  Carlisle is a "debt collector" as defined by the FDCPA.

14.     Defendant CoreLogic Document Solutions, aka First America Document Solutions, 450 E. Boundary Street, Chapin, South Carolina 29036, is a subsidiary of Defendant CoreLogic Services, LLC, c/o CSC Lawyers Incorporating Service, 50 W. Broad Street, Suite 1800, Columbus, Ohio 43215, statutory agent, is a Delaware Corporation, registered to do business in the State of Ohio, its principal place of business is located at 4 First American Way, Santa Ana, California 92706.

### III.  JURISDICTION AND VENUE

15.     Plaintiffs incorporate by reference each of the preceding paragraphs as if fully restated herein.

16.     Jurisdiction to hear this matter lies with this Court under diversity 28 U.S.C. § 1332 and is appropriate under 28 U.S.C. §1331 and 28 U.S.C. § 1367, because certain actions of Defendants hereinafter described occurred in Hocking County, Ohio, and are in violation of various federal and Ohio statutes, and the common law.

17.     Venue is proper pursuant to 28 U.S.C. § 1391, because this matter is between citizens of different states, the actions of Defendants hereinafter described occurred in this district, and the amount in controversy is greater than $75,000.

## IV. FACTUAL BACKGROUND

18.     Plaintiffs incorporate by reference each of the preceding paragraphs as if fully restated herein.

19.     The Ogles granted a mortgage on their 5-acre residential parcel in Section 26, Good Hope Township, Hocking County, Ohio, to AWL, whom they understood at the time to be a dba for Countrywide Home Loans, Inc. and the lender of $98,000.00, on or about May 17, 2005, for the purpose of refinancing at an attractive advertised, lower interest rate. The Ogles had no knowledge of the concept of MERS as "mortgagee/nominee" when they signed the mortgage document. Plaintiff Charles R. Ogle executed a note to AWL, whom he understood at the time to be a dba for Countrywide Home Loans, Inc. and the lender of the mortgage loan funds.

20.     The Ogles set up their monthly mortgage loan payment by automatic draft from their Century National Bank joint checking account they maintained for automatic withdrawals of specific expenses. The Ogles utilized the Countrywide Home Loans website to access their account to increase or decrease additional principle payments on the mortgage loan, the last login being in April of 2009. Plaintiffs understood that the electronic mortgage payment withdrawals were being paid back to CW, whom they understood at the time to be the lender of the mortgage loan funds and beneficiary of their monthly payments.

7

21.    In late summer of 2009, the Ogles sought to refinance their 5-acre residential parcel to consolidate the two parcels making up their 87.795-acre homestead back into one parcel from which the residential 5-acre parcel had been split. In September of 2009, Farm Credit Services told the Ogles they would need to acquire a payoff figure and was in the process of ordering a title search. Melanie A. Ogle entered "countrywide.com" on the internet to submit a payoff inquiry only to find that the Countrywide Home Loans website redirected to a Bank of America Home Loans website. Startled and confused, she immediately exited the site. The Ogles then retrieved their Century National Bank checking account bank statements online from the preceding months and discovered that "Countrywide Home Loans" had been replaced with "Bank of America Home Loans" next to the electronic draft amount on their checking account statements beginning in May of 2009. The Ogles had never been informed of any mortgage assignment. The Ogles went the Hocking County Recorder's Office and could not locate any record of a mortgage assignment. The Ogles then inquired of Century National Bank the authority process of electronic funds transfers and were told that the Ogles would have had to authorize the withdrawals which had been transferred to a Bank of America branch in Michigan.

22.    Since the Ogles had never given BAC consent to electronically withdraw funds from their checking account, the Ogles closed the checking account. Within a few weeks, Charles R. Ogle received correspondence via U.S. Mail from BAC, claiming to be the servicer for the "noteholder" of his mortgage loan.

23.    Mr. Ogle responded by certified mail requesting BAC to identify the elusive "noteholder"

for which it claimed to be the servicer, and requested certified copies of a mortgage and note and any assignments or endorsements. BAC responded with uncertified copies of electronically scanned images of the Plaintiffs' mortgage and note to AWL, without any assignments or endorsements. Mr. Ogle responded that until BAC could provide the identity of the elusive "noteholder", he could not hand any money over to BAC. As the months went by, Mr. Ogle received numerous notices to be "patient" and repeatedly, to give BAC 20 more days to produce the requested documents.

24.  In the meantime, BAC reported to the credit bureaus that Mr. Ogle was in default on a mortgage loan with BAC. Defendants prepared, signed, and recorded a fraudulent mortgage assignment with the Hocking County Recorder falsely claiming that MERS sold both the Ogles' mortgage and note to BAC and, a few days later prepared and filed a foreclosure action in the Hocking County Common Pleas Court against Charles R. Ogle and Ogleshill Farm, LLC for an order to literally steal 5 acres of residential and agricultural real estate titled in the name of Ogleshill Farm, LLC. BAC through its attorney, Carlisle, falsely claimed that Charles R. Ogle was in default on a note to AWL, and that the same was due BAC, falsely asserting that BAC owned the note and a first lien on the mortgage security.

25.  Carlisle is a law firm specializing in providing "mortgage default services" and one of the regional foreclosure mills, engaging in a pattern and practice of drafting fraudulent mortgage assignments, allonges, affidavits, foreclosure complaints and supporting pleadings. Carlisle has gone as far as to anoint its own employee, Sue Barnes, as a "MERS vice president" robosigner falsely claiming to assert mortgage assignment authority for dozens of financial entities. Carlisle

9

additionally directs their employees to notarize documents not executed in their presence, including documents which were signed outside the State of Ohio. Carlisle uses its very own company to provide title documentation in a foreclosure.

26.    Two days after BAC and Carlisle filed their foreclosure complaint, Mr. Ogle filed a request for production of documents in the case and served the same on BAC's Carlisle attorney. Several months later in open court, BAC's Carlisle attorney produced what he claimed was Plaintiffs' original mortgage, but he did not have any alleged original mortgage assignment and declared that the note was lost. At a subsequent hearing, BAC's Carlisle attorney produced what he claimed was the original note, but there was no alleged allonge attached and the alleged original note had an endorsement which did not appear on the copies of the note and allonge documents submitted with the complaint.

27.    Mr. Ogle submitted a Qualified Written Request ("QWR") to BAC's statutory agent after the initiation of the foreclosure, and yet a different attorney firm representing BAC responded to his QWR. Although refusing to respond to most of Mr. Ogle's questions in the letter, an entity other than BAC was named as the owner of the Ogles' mortgage and note, and it was stated that BAC was the servicer. BAC would not respond further to Mr. Ogle's subsequent correspondence by certified mail and email regarding his QWR.

28.    Plaintiffs enlisted the services of a private investigator in Texas and discovered that Defendant Sandra Williams, the person who signed the above-referenced fraudulent mortgage assignment and allonge and Defendant Sophia L. Cummings, the notary of the mortgage

10

assignment, are employees of BAC. Ms. Williams is not an employee or vice president of MERS or AWL, as purported in the above-referenced fraudulent mortgage assignment and allonge. From online county records, Plaintiffs compiled a list of 85 different titles Ms. Williams asserts to hold as vice president for a multitude of financial entities, claiming authority to execute documents for the purpose of foreclosing on homes across the country. Other robosigners who are employed alongside Ms. Williams and who have co-signed fraudulent documents with her are named in numerous conspiracy and racketeering complaints across the country, many of whom have been deposed and admitted to having no personal knowledge of the facts stated in the documents which they signed. Robosigners Williams and Cummings were essential in executing the conspiracy underlying the Defendants' racketeering activities against Plaintiffs.

29.    A securitization investigation company has reported to Plaintiffs that their mortgage loan had been securitized into a certain trust at the time it was executed.

30.    Plaintiffs learned from *United States Bankruptcy Court, District of New Jersey, In the matter of John T. Kemp, debtor, case no. 08-18700-JHW, John T. Kemp v. Countrywide Home Loans, Inc. adversary no. 08-02448-JHW*, that CW actually retained possession of original notes rather than relinquishing them to the destination securitized trusts into which they were sold.

31.    BAC's fraud scheme unraveled in the county courthouse in Logan, Ohio, and it became clear to Plaintiffs why BAC would not reveal the elusive "noteholder" over a year before. BAC would not cooperate with interrogatories, admissions or depositions and ultimately voluntarily dismissed their fraudulent foreclosure case, in lieu of complying with discovery.

32.     Defendants have since prepared, signed, and recorded an additional fraudulent mortgage assignment with the Hocking County Recorder falsely claiming that MERS has once again, sold both the Ogles' mortgage and note to BAC, more than a year after the first fraudulent mortgage assignment was allegedly executed and recorded.

33.     As Plaintiffs have discovered as a result of Defendants' actions, the "lender," AWL, on the original note was not the lender. The "lender" never actually loaned any money to the homeowner and was never owed any money, so the beneficial interest in the note was never in AWL or CW.

34.     The loan agreements were predatory and CW made false representations to the Plaintiffs which induced the Plaintiffs to enter into the loan when CW knew the representations were false when they were made. Plaintiffs' note and mortgage were bifurcated at the closing table with the mortgage being recorded in the name of MERS as "nominee" and "mortgagee" for the "lender".

35.     At the time Plaintiffs signed the Note and Mortgage, they were unknowingly converting their property into an asset of a "trust", which is actually a mortgage-backed security ("MBS"), an investment vehicle, defined and regulated by the Security and Exchange Commission. The originators of the mortgage loan immediately and simultaneously securitized the note and mortgage and no longer had an interest in the note or mortgage. Plaintiffs were never informed of the nature of the scheme. They were deliberately induced into signing a negotiable instrument which was never intended as such, but was intended as collateral for a MBS. The fact that the mortgage loan was meant to fund an MBS was a "material disclosure" which was deliberately and intentionally

undisclosed.

36. One element of the fraud is to keep the name of the trust, or the true beneficiaries of the mortgage loan, from ever being revealed. BAC fraudulently retains the proceeds of a foreclosure sale when as the trust no longer exists or has been paid off by credit default swap insurance. The court and the property owner will never know that the property was literally stolen.

37. MBS are covered by insurance policies, commonly referred to as a derivative or collateral contract. These derivative contracts are not recorded or regulated by the SEC. The actual derivative contract is for more and up to ten times, the face value of the MBS.

38. The failure to disclose the identity of the true lender at closing was also a "material disclosure" the nature of which would make the contract voidable under Ohio contract law.

39. CW never relinquished Plaintiffs' mortgage and note to the only possible beneficiary(ies).

40. CW and BAC retained proceeds of Plaintiffs' mortgage payments without the knowledge or permission of the investors or beneficiaries.

41. BAC, which of alleges to own Plaintiffs' mortgage and note, is a third party and has no pecuniary or beneficiary interest in Plaintiffs' mortgage or note. A servicer is not in privity with the lender and is not a beneficiary under a mortgage loan. The true owner or beneficiary of the mortgage loan has not declared a default. The servicer is not in privity nor does it have the

13

permission of the beneficial owners of the note to file suit on their behalf.

42.    Servicers are not beneficiaries under a mortgage loan and do not possess a mortgage in a property. They will never have a right to possess a mortgage in a property. BAC cannot have an interest in Plaintiffs' mortgage or note. A mortgage assignment or note endorsement to BAC is a legal nullity.

43.    Since BAC can never hold or transfer Plaintiffs' mortgage or note on behalf of the investors or beneficiaries, in order to collect on the mortgage loan and/or attempt to divest Plaintiffs of their home, Defendants conspired to create, forge and fabricate fraudulent documents for the unjust enrichment of BAC.

44.    The mortgage assignment purportedly transferred the mortgage and note from MERS to BAC even though MERS never had an interest in the mortgage or note. An assignment from MERS is a legal nullity.

45.    MERS, acting as the "mortgagee" or "nominee", was never the lender, never intended to be the lender, nor did it represent the true lender of the funds for the mortgage loan. MERS was never the creditor or beneficiary of the underlying debt or an assignee under the terms of Plaintiff's note. MERS does not or has never owned Plaintiff's note. No note or other evidence exists which could have ever made Plaintiffs indebted to MERS in any way. MERS never had, nor will it ever have standing to enforce Plaintiffs' mortgage and note. MERS never had, nor will it ever have the authority to assign Plaintiffs' mortgage or note to any entity. MERS has never possessed a

14

pecuniary or beneficial interest in Plaintiffs' mortgage or note.

46.     MERS is owned by the company, Merscorp, Inc. MERS is a RICO enterprise and is the
primary innovation through which conspirators, including all other Defendants, have accomplished
their illegal objectives to transfer, bundle, and securitize mortgage loans. Merscorp, Inc., claims to
be the sole shareholder in MERS. BAC is a shareholder in MERS. In addition to the capital
contributed by the shareholders, MERS has a committed line of credit from BAC.

47.     Merscorp, Inc., is a foreign corporation owned and created in or about 1998 by conspirators
from the largest Wall Street investment banks in the United States, in order to undermine and
eventually eviscerate longstanding principles to bypass the established laws governing mortgage
transfers and recording.

48.     MERS is unregistered and unlicensed to conduct mortgage lending or any other type of
business in Ohio and has been and continues to knowingly and intentionally, illegally and
fraudulently, record mortgages and conduct business in Ohio on a large scale and systematic
fashion.

49.     Any mortgage loan with a mortgage recorded in the name of MERS, is at most, an
unsecured debt. The MERS system has made it nearly impossible for a person to identify or
confirm the holder of their mortgage or note.

50.     The mere fact that MERS managed to come up with a convenient way for mortgage banks

to avoid the legal methods of assigning and recording mortgage transfers, does not make that system legal or effective.

51.    *United States Bankruptcy Court, Eastern District of New York, In re: Ferrel L. Agard, Case No. 810-77338-reg* stated: "For example, MERS argues that its agent status can be found in the Mortgage which states that MERS is a "nominee" and a "mortgagee of record." However, the fact that MERS is named "nominee" in the Mortgage is not dispositive of the existence of an agency relationship and does not, in and of itself, give MERS any "authority to act." MERS v. Saunders, 2 A.3d 289, 295 (Me. 2010) (designation as the 'mortgagee of record' does not qualify MERS as a "mortgagee"). MERS also relies on its rules of membership as evidence of the agency relationship. However, the rules lack any specific mention of an agency relationship, and do not bestow upon MERS any authority to act. Rather, the rules are ambiguous as to MERS's authority to take affirmative actions with respect mortgages registered on its system. Aside from the inappropriate reliance upon the statutory definition of "mortgagee," MERS's position that it can be both the mortgagee and an agent of the mortgagee is absurd, at best. However, even if MERS had assigned the Mortgage acting on behalf of the entity which held the Note at the time of the assignment, this Court finds that MERS did not have authority, as "nominee" or agent, to assign the Mortgage absent a showing that it was given specific written directions by its principal. This Court finds that MERS's theory that it can act as a "common agent" for undisclosed principals is not supported by the law. The relationship between MERS and its lenders and its distortion of its alleged "nominee" status was appropriately described by the Supreme Court of Kansas as follows: "The parties appear to have defined the word [nominee] in much the same way that the blind men of Indian legend described an elephant – their description depended on which part they were touching at any given

time." *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166-67 (Kan. 2010).

52.    No named Defendant herein is the owner of Plaintiffs' mortgage or note, or a holder in due course.

53.    Nonetheless, BAC has continued to harass Plaintiffs by phone and mail demanding money from the Plaintiffs, and prowling around Plaintiffs' home.

54.    Plaintiffs have experienced, and continue to experience, an inordinate and unwarranted amount of stress, and injury to their credit, as a result of Defendant's actions.

55.    Defendant's actions have caused Plaintiffs actual damages, including but not limited to economic damages in the form of denial of credit, and non-economic damages in the form of aggravation, humiliation, embarrassment, depression, strain on personal relationships, sleeplessness, worry and anxiety.

56.    In addition to damages, Defendants' actions have created and continue to create a permanent cloud on Plaintiffs' transfer of title to Ogleshill Farm, LLC, and land records in relation to the title illegally divested in BAC.

## V. CLAIMS

**First Claim: Violation of Racketeer Influenced and Corrupt Organizations Act**

57.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully restated

herein.

58.     At all times relevant to this Complaint and its allegations, Defendants associated in fact and constituted an "enterprise" within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1961(a)(4).

59.     By engaging in a pattern of racketeering activity, specifically "mail or wire fraud," Defendants participated in a criminal enterprise affecting interstate commerce.

60.     A separate count of mail fraud took place each and every time a fraudulent pleading, note, allonge, mortgage or mortgage assignment was sent by a Defendant through the use of the U.S. Mail. Likewise is true for any documents sent via electronic mail as a separate act of wire fraud.

61.     The Enterprise engaged in and affected interstate and foreign commerce, including, but not limited to: the alleged sale, alleged transfer, and attempted foreclosure of real property affecting interstate commerce; the alleged sale, alleged transfer, and alleged assignment of notes and mortgages in interstate commerce; and the creation and sale of securities in interstate commerce.

62.     The Enterprise developed an intentional scheme to defraud the Plaintiffs by submitting perjured documents to support fraudulent collection of monies and an attempted foreclosure.

63.     The members of the Enterprise associated for the purposes of undermining the justice system by fabricating a fraudulent mortgage assignment, fraudulent allonge and fraudulent

foreclosure complaint, without regard for compliance with the law, and conducted their activities through a pattern of racketeering activity involving a systematic fraud on the Hocking County Recorder and the Hocking County Common Pleas Court and Plaintiffs.

64. The criminal Enterprise was used to conceal the true ownership of mortgage loans from the general public, including investors, borrowers, the SEC, the IRS and the courts.

65. These predicate acts are related and share the common purpose of defrauding Plaintiffs of their money and property, the common themes of "non-documentation" and concealment of the real parties in interest and satisfy the RICO continuity requirement.

66. In furtherance of its illicit purposes, the Enterprise conducted and participated in a pattern of racketeering activity, by committing fraud and utilizing the U.S. Mail and the internet, agreeing upon the same criminal objective to wit: collection of monies not owed it and/or the theft of real property through illegal foreclosures. Each conspirator is responsible for the actions of the others and the results of the conspiracy as a whole. Those who provide support for an illegal enterprise are liable for the actions of those who commit the criminal acts, regardless of whether they participated in that particular criminal act.

67. Defendants had full knowledge of their repeated scheme and have carried out the same racketeering activity countless times against unsuspecting homeowners and will continue to engage in such activity until it is otherwise precluded from doing so.

19

68.     Defendants intended to and have affirmatively and fraudulently concealed their wrongful conduct and the existence of their Enterprise and racketeering activity from Plaintiffs and intended that the Enterprise be kept secret from Plaintiffs.

69.     The Enterprise's improper practices and frauds were, by their nature, inherently self-concealing, and the affirmative actions of the Enterprise were wrongfully concealed and carried out in a manner that precluded detection.

70.     By virtue of the fraudulent concealment by the Enterprise, the running of any statute of limitations has been tolled and suspended with respect to any claims that Plaintiffs have as a result of the Enterprise's wrongful conduct alleged in this Complaint.

71.     Plaintiffs could not have discovered the Enterprise's improper conduct and frauds alleged herein at any earlier date by the exercise of reasonable due diligence, because of the deceptive practices and techniques of secrecy employed by the Enterprise to avoid detection of and affirmatively conceal their actions.

72.     As a result of the Enterprise's conduct, Plaintiffs have been injured in their business and property by being deprived of property title, credit, humiliation, embarrassment, loss of consortium and emotional distress, loss of work, loss of time to their farm and legal fees.

73.     Plaintiffs are entitled to judgment in the amount of three times their actual damages, plus costs and attorneys' fees under 18 U.S.C. §1964[c].

**Second Claim: Violation of Fair Debt Collection Practices Act**

74.     The financial obligation originally owed to CW by Plaintiffs is a "debt" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(5).

75.     Defendants BAC and Carlisle are "debt collectors" within the meaning of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692a.

76.     Defendants' foregoing acts in attempting to collect this debt constitute violations of the Fair Debt Collection Practices Act, including but not limited to the following sections:

    i.  § 1692d - any conduct the natural consequence of which is to harass, oppress, or abuse any person;

    ii.  § 1692e - any false, deceptive, or misleading representation or means in connection with the debt collection;

    iii.  § 1692e(2) - misrepresenting the character, amount, or legal status of an alleged debt;

    iv.  §62e(4) - the representation or implication that nonpayment of any debt will result in the seizure or sale of any property unless such action is lawful;

    v.  § 1692e(5) - threaten to take any action that cannot legally be taken or that is not intended to be taken;

    vi.  § 1692e( 10) - the use of any false representation or deceptive means to collect or attempt to collect any debt;

    vii. § 1692f - any unfair or unconscionable means to collect or attempt to collect the alleged debt;

viii.      §1692f(l) - attempt to collect any amount not authorized by the agreement creating

the debt or permitted by law.

77.    Because BAC is not the true owner and holder of the mortgage and note, it is a "debt

collector" as that term is defined under the FDCPA.

78.    As a debt collector, BAC violated the FDCPA by, among other things, filing and prosecuting

a foreclosure action and fraudulently representing that it is the true owner and holder.

79.    BAC's violation of the FDCPA proximately caused serious and continuing injury and

damage to the Plaintiffs, including costs in defending a foreclosure action, loss of credit standing,

and other costs.

80.    Plaintiffs were harmed by Defendant's violations and are entitled to statutory damages,

actual damages, attorney's fees and costs pursuant to 15 U.S.C. §1692k(a).

81.    Because the conduct of Defendants and nature of the violations of the FDCPA are so

egregious, and that the FDCPA violations were part of a deliberate scheme, Plaintiffs are entitled to

the maximum possible relief permitted.

**Third Claim: Violation of Real Estate Settlement Procedures Act**

82.    The acts of Defendants constitute numerous and multiple violations of the Real Estate

Settlement Procedures Act 12 USC § 2605 ("RESPA"), including but not limited to 12 U.S.C. §

2605(e)(1), 2605(e)(2) and 2605(e)(3).

83.    In contradiction of 12 U.S.C. §2605(e), Defendant failed, within 60 days of receiving Plaintiffs' QWR, to identify the beneficiary of Plaintiffs' payments and respond to Plaintiffs' dispute in response.

84.    As a result of Defendant's violations of RESPA, Plaintiffs are entitled to actual damages pursuant to 12 U.S.C. § 2605(f)(1)(B); and reasonable attorney's fees and costs pursuant to 12 U.S.C. § 2605(f)(3).

**Fourth Claim: Violation of Truth in Lending Act**

85.    BAC violated the Truth in Lending Act 15 U.S.C. § 1641 et al., by failing to send a written notice to Plaintiffs within 30 days after Plaintiffs' mortgage loan was allegedly sold or otherwise transferred or assigned.  BAC never sent a written notice to Plaintiffs after Plaintiffs' mortgage loan was allegedly sold or otherwise transferred or assigned.

86.    CW dba AWL violated the Truth in Lending Act 15 U.S.C. § 1641 et al., by deliberately and intentionally failing to disclose the fact that Plaintiffs' mortgage loan was meant to fund an MBS.

87.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered actual damages and are entitled to actual and statutory damages, attorney's fees and costs.

23

**Fifth Claim: Violation of Fair Debt Credit Reporting Practices Act**

88.     BAC has violated the Fair Debt Credit Reporting Practices Act 15 U.S.C. § 1692 et seq. by falsely misrepresenting a debt against Plaintiffs, falsely reporting that Plaintiffs owe money to BAC, falsely reporting to credit bureaus that Plaintiffs are in default on a mortgage loan, falsely reporting to credit bureaus that BAC owns Plaintiffs' mortgage loan, threatening legal action against Plaintiffs, failing to cease communications upon request in writing, contacting Plaintiffs when Plaintiffs were represented by an attorney and communicating with Plaintiffs after request for validation had been made.

89.     As a direct and proximate result of Defendant's actions, Plaintiffs have suffered actual damages and are entitled to actual and statutory damages, attorney's fees and costs.

**Sixth Claim: Ohio Consumer Sales Practices Act**

90.     At all relevant times, CW and BAC were "suppliers" engaged in a "consumer transaction" with Plaintiffs, and Plaintiffs at all relevant times were "consumers" as defined by the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01.

91.     The improper, illegal and abusive debt collection practices committed by Defendants are in violation of the federal Fair Debt Collection Practices Act, which also constitutes unfair and deceptive practices in violation of the Ohio Consumer Sales Practices Act.

92.     BAC's violations of the Consumer Sales Practices Act proximately caused serious and continuous injury to Plaintiffs, including the costs incurred in defending the foreclosure action, loss

24

of credit standing, and other costs.

93.     Plaintiffs are entitled to statutory damages, actual damages multiplied by three, and non-economic damages including damages for mental anguish. Defendants' actions were done knowingly, and therefore entitle Plaintiffs to reasonable attorney's fees and costs.

**Seventh Claim: Violation of the Ohio "Baby RICO" Statute**

94.     Defendants acted in violation of ORC § 2923.32 ("Baby RICO") by engaging in and participating in Plaintiffs' affairs through a pattern of corrupt activity, and unlawful collection of debt.

95.     Said Defendants' violation of Baby RICO proximately caused serious and continuous injury and damages to Plaintiff, including costs, loss of credit standing, and other costs.

**Eighth Claim: Unfair or Deceptive Acts or Practices**

96.     Defendants violated ORC 1345.02(A) and (F)(1) by Defendants' intentional misrepresentation, misconduct and conscious wrongdoing by preparing, witnessing and filing a frivolous foreclosure complaint, fraudulent mortgage assignment, maliciously filed in bad faith and without probable cause against Plaintiffs and failure to provide disclosures required under state and federal law.

97.     Plaintiffs are entitled to punitive damages against Defendants, pursuant to ORC 1345.09(B).

**Ninth Claim: Wrongful Foreclosure**

98.     Defendants BAC and Carlisle filed a foreclosure action in the Hocking County Court of Common Pleas, Case Number 10CV0069, against the Plaintiffs in violation of law.

99.     The initiation of the foreclosure action was premised on the fraudulent documents prepared by Defendants prior to the foreclosure action.

100.    As a result thereof, the Defendants are liable for all natural, proximate and consequential damages due to their actions including an award of punitive damages upon a proper evidentiary showing.

**Tenth Claim: Civil Conspiracy**

101.    Defendants acted in concert and conspired to deprive Plaintiffs of their legal rights and property.  Such actions constitute the tort of civil conspiracy.

102.    As a direct and proximate result of Defendants' civil conspiracy, Plaintiffs have suffered serious and continuing injury and damage, including costs incurred in defending the foreclosure action, loss of credit standing, and other costs.

**Eleventh Claim: Negligent Servicing**

103.    BAC owed a duty to Plaintiffs to identify the noteholder of Plaintiffs mortgage loan which it alleged to be servicing and to refrain from taking adverse, unjustified legal action against Plaintiffs.

104. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered actual damages and are entitled to general damages, consequential damages, and attorney's fees and costs.

**Twelfth Claim: Breach of Contract and the Covenant of Good Faith and Fair Dealing**

105. Plaintiffs' mortgage provided that if Plaintiffs went into default, a foreclosure of the property would be in accordance with applicable law. Defendants breached their duty to Plaintiffs by ignoring Ohio law and the terms of the mortgage.

106. Despite the fact that BAC does not own Plaintiffs' mortgage or note and therefore, cannot be in default to BAC, BAC has declared that it owns Plaintiffs' mortgage and note and that Plaintiffs owe BAC money and wrongfully attempted to sue Plaintiffs in foreclosure.

105. BAC continues to demand money from Plaintiffs for a mortgage loan, which BAC falsely claims to own. BAC has repeatedly instructed its representatives to prowl around Plaintiffs' home. Defendant's continued and ongoing breach of contract is in utter bad faith and entitles Plaintiffs to general damages, consequential damages, and attorney's fees and costs.

**Thirteenth Claim: Slander of Title**

106. Ogleshill Farm, LLC is the rightful owner and legal title holder of the 5-acre property described herein.

107. Defendants have knowingly and maliciously communicated, in writing, a false statement which has the effect of disparaging Plaintiffs' transfer of title to Ogleshill Farm, LLC, causing

Plaintiffs special liability and other damages.

108.    The mortgage assignment was drafted by Carlisle, the same law firm which filed the foreclosure action. The mortgage assignments from MERS to BAC is a legal nullity and since placed in the public record is fraud and subject to prosecution.

109.    MERS has never had any legally enforceable claim or interest as to Plaintiffs' mortgage or note and its claim as mortgagee is a cloud on Plaintiffs' transfer of title and should be quieted as against MERS under Ohio law.

110.    MERS has caused to be recorded against the transfer of title to Ogleshill Farm, LLC by Plaintiffs, a false claim of interest, flawing said transfer.

111.    As alleged herein, any purported transfer of any mortgage interest in Plaintiffs' real estate was wrongful and invalid because the mortgage was invalid and was not conducted in accordance with the laws of Ohio. MERS knew or should have known that such transfers were wrongful and invalid. Any publication of an ownership interest in the same, is therefore false.

112.    The recording of the mortgages published the information to third parties. As a result of said wrongful publication of an ownership interest in the Plaintiffs' property, Plaintiffs have incurred damages in excess of the amount of their publicly recorded mortgages and will continue to incur attorney's fees and costs related to this litigation, in an amount to be proven at trial.

113.   Plaintiffs are entitled to have their transfer of title to Ogleshill Farm, LLC quieted in its name under Ohio law for the reason that no Defendants loaned any money to any Plaintiff, have no contractual relationship with any Plaintiff and no Defendant is the holder in due course of the note between Charles R. Ogle and AWL.

114.   No other party who could have a legitimate interest in the property described herein has made any claim of such an interest.  Plaintiffs are entitled to have clear title restored and release of all mortgages and strike all mortgage assignments filed in the name of the Defendants as to Charles R. Ogle and Melanie A. Ogle.

**Fourteenth Claim: Declaratory Relief**

115.   Plaintiffs seek a declaratory judgment against Defendants stating that Defendants have violated Plaintiffs' rights and that Defendants are not due payments from Plaintiffs or recognition in the real property deeded to Ogleshill Farm, LLC recorded in Hocking County Official Records Volume 439, Page 910.

116.   A declaratory judgment against AWL, MERS, CW, and BAC that AWL, MERS, CW, or BAC have no interest in a mortgage recorded Hocking County Official Records Volume 335, Page 420.

117.   A declaratory judgment against AWL, MERS, CW, and BAC that AWL, MERS, CW, or BAC have no interest in real property which Charles R. Ogle and Melanie A. Ogle deeded to Ogleshill Farm, LLC recorded in Hocking County Official Records Volume 439, Page 910.

118.   A declaratory judgment against AWL, MERS, CW, and BAC that Plaintiffs do not owe
AWL, MERS, CW, or BAC money.

119.   A declaratory judgment against AWL, MERS, CW, and BAC that AWL, MERS, CW, or
BAC have no interest in a note from Charles R. Ogle to America's Wholesale Lender dated May
17, 2005, in the amount of $98,000.00.

**Fifteenth Claim: Injunctive Relief**

120.   An injunction against all Defendants from pursuing Plaintiffs for money and halting the
filing of foreclosure actions by any Defendant against Plaintiffs.

121.   An injunction against Defendants from recording a lien against real property owned by
Plaintiffs or property Plaintiffs deeded to Ogleshill Farm, LLC.

122.   WHEREFORE, Plaintiffs state that they have suffered economic damages in the form of
undue financial hardship, loss of credit, loss of wages and discretionary income, loss of time and
funds to devote to their farm business, and travel expenses. Plaintiffs have suffered damage to
their reputation, emotional distress in the form of anger, frustration, embarrassment and
humiliation, that the nature of said Defendants' conduct and actions warrants and justifies an award
of substantial  punitive damages, that Plaintiffs are entitled to a return of all funds by CW and BAC
not collected from Plaintiffs for the true beneficiary(ies) of  Plaintiffs' mortgage loan, and seek to
recover damages to which they are entitled under state and federal law for violations of statutes and

30

regulations adverse to them, and request any such other relief as the Court deems just and equitable against Defendants.

123.   Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

DATED:   June 20th, 2011                    Respectfully submitted,

Charles R. Ogle, Plaintiff, pro se          Melanie A. Ogle, Plaintiff, pro se
11575 Donaldson Road                        11575 Donaldson Road
Rockbridge, Ohio 43149                      Rockbridge, Ohio 43149
740-385-5959                                740-385-5959

## VERIFICATION OF COMPLAINT

I, Charles R. Ogle, have read the foregoing Complaint and I am acquainted with the contents thereof, and the same is true of my own knowledge and belief.

Charles R. Ogle

## VERIFICATION OF COMPLAINT

I, Melanie A. Ogle, have read the foregoing Complaint and I am acquainted with the contents thereof, and the same is true of my own knowledge and belief.

Melanie A. Ogle