# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Charles R. Ogle, *et al.*,

       Plaintiffs,

                                   **Case No. 2:11-cv-540**
                                   **JUDGE SMITH**
     **v.**                            **Magistrate Judge Kemp**

BAC Home Loans Servicing LP, *et al.*,

       Defendants.

Bank of America, N.A.,

       Plaintiff,                    **Case No. 2:11-cv-745**
                                   **JUDGE SMITH**
     **v.**                            **Magistrate Judge Kemp**

Ogleshill Farm, LLC, *et al.*,

       Defendants,

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendants Bank of America and Carlisle, McNellie, Rini, Kramer, & Ulrich, Co, LPA's Motions for Judgment on the Pleadings (Docs. 59 and 65 in Case No. 2:11-cv-540; and Docs. 44 and 53 in Case No. 2:11-cv-745).  Plaintiffs Charles and Melanie Ogle have responded and have also filed a Motion for Default Judgment and Motion for Judgment on the Pleadings (Docs. 54 and 55 in Case No. 2:11-cv-745).  These motions are briefed and ripe for disposition.  For the reasons that follow, the Court **GRANTS** Bank of

America's Motion for Judgment on the Pleadings; **GRANTS** Carlisle, McNellie, Rini, Kramer, & Ulrich, Co, LPA's Motion for Judgment on the Pleadings; **DENIES** Charles and Melanie Ogle's Motion for Default Judgment; and **DENIES** the Ogles' Motion for Judgment on the Pleadings.

## I.    BACKGROUND

On May 17, 2005, Plaintiff Charles Ogle executed a promissory note (the "note"), whereby he agreed to repay $98,000 (plus interest) loaned to him by America's Wholesale Lender ("AWL"), which was doing business as Countrywide Home Loans, Inc. ("CHL"). On the same day, Plaintiff Charles Ogle, and his wife, Plaintiff Melanie Ogle, granted a mortgage to CHL, thereby granting CHL a security interest in Plaintiffs' property.[1] In an effort to meet the monthly obligation under the terms of the note, Plaintiffs established an automatic monthly mortgage loan payment from their personal checking account. In the fall of 2009, however, Plaintiffs determined that their loan payment was going to BAC Home Loans Servicing L.P. ("BAC") (now Bank of America N.A. successor by merger), and not CHL, and they thereafter ceased making payments. In March 2010, BAC initiated an action in the Hocking County Ohio Court of Common Pleas, asserting its right to foreclose as holder of the note executed by Plaintiff Charles Ogle. Plaintiffs challenged the foreclosure, and in February 2011, BAC voluntarily dismissed the action, presumably without prejudice.

In June 2011, *pro se* Plaintiffs Charles and Melanie Ogle initiated Case No. 2:11-cv-540 in this Court (the "federal action") against fourteen parties alleging that these defendants are unlawfully attempting to displace them from their home. The defendants in the federal action

---

[1] Mrs. Ogle is not a borrower under the Note and is therefore not liable on the debt. She signed the Mortgage because of her marital interest in the Property.

2

include BAC, AWL, CHL, Sandra Williams, Mortgage Electronic Registration Systems, Inc.

("MERS"), Carlisle McNellie Rini Kramer & Ulrich Co., LPA ("Carlisle"), and CoreLogic

Document Solutions ("Corelogic")[2] (these parties collectively will be referred to as the

"Defendants").  Plaintiffs, the Ogles, assert a number of federal and state claims, including a

claim under the Racketeer Influenced and Corrupt Organizations Act, a claim under the Ohio

Corrupt Practices Act, and a claim under the Fair Debt Collection Practices Act.

In July 2011, Bank of America, N.A., refiled the foreclosure action in the Hocking

County Ohio Court of Common Pleas.  In the state foreclosure action, Plaintiffs filed a Third

Party Complaint, which essentially presents the same claims against the same parties as

presented in this Court in Case No. 2:11-cv-540.

In August 2011, the Court denied Plaintiffs' Renewed Motion for Preliminary Injunction

(Doc. 34).  Also in August 2011, Plaintiffs removed the foreclosure action to this Court, which is

assigned Case No. 2:11-cv-745.  On January 12, 2012, the Court issued an Opinion and Order

denying Defendants' Motion to Strike, granting Defendants' Motion to Dismiss, denying

Plaintiffs' Motion for Sanction, and granting Third Party Defendants' Motion to Dismiss Third

Party Complaint (Doc. 48).  All of Plaintiffs claims in Case No. 2:11-cv-540 were dismissed

against all Defendants except for Carlisle as they had not moved to dismiss.  Additionally, the

foreclosure action remains pending.

---

[2] In November 2011, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii),
Plaintiffs claims against Defendant Corelogic were dismissed with prejudice.

## II.    STANDARD OF REVIEW

The standard for reviewing a motion for judgment on the pleadings under Federal Rules of Civil Procedure 12(c) is identical to the standard applied to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1950. While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.    DISCUSSION

Defendant Carlisle moves for judgment on the pleadings on all of Plaintiffs' claims against them in Case No. 2:11-cv-540, as well as judgment on the pleadings on the Ogle's Third Party claims in Case No. 2:11-cv-745. Plaintiff BAC also moves for judgment on the pleadings on the Ogle's counterclaims in Case No. 2:11-cv-745. The Ogles have moved for default judgment against BAC and also seek judgment on the pleadings on their counterclaims. The Court will address the motions in turn.

### A.    Carlisle's Motion for Judgment on the Pleadings

Plaintiffs, the Ogles, brought fifteen claims against Defendants in their Amended Complaint and Third Party Complaint in Case No. 2:11-cv-540, which include:  violation of the

Racketeer Influenced and Corrupt Organizations Act, violation of the Fair Debt Collection

Practices Act, violation of the Real Estate Settlement Procedures Act, violation of the Truth in

Lending Act, violation of the Fair Credit Reporting Act, violation of the Ohio Consumer Sales

Practices Act, violation of the Ohio "Baby RICO" statute, unfair or deceptive acts or practices,

wrongful foreclosure, civil conspiracy, negligent servicing, breach of contract and the covenant

of good faith and fair dealing, slander of title, declaratory relief, and injunctive relief.  All of

these claims were dismissed against all the Defendants with the exception of Defendant Carlisle

who did not move.  Now, Defendant Carlisle moves for judgment on the pleadings for the same

reasons the Court found all the claims should be dismissed against the other Defendants in its

January 12, 2012 Opinion and Order.

The Court has carefully reviewed its analysis in the January 12th Opinion and Order and

finds that for the same reasons the Court granted the other Defendants' Motion to Dismiss, those

claims should also be dismissed against Defendant Carlisle.  Plaintiffs have failed to allege any

additional facts against Defendant Carlisle to sufficiently plead the aforementioned claims.

Accordingly, Defendant Carlisle is entitled to judgment on the pleadings on all of Plaintiffs'

claims brought in Case No. 2:11-cv-540.  Additionally, this case is hereby dismissed.

**B.      Ogle's Third-Party Complaint and Counterclaims in Case No. 2:11-cv-745**

Carlisle moves for judgment on the pleadings on the Ogle's Third-Party claims against it.

BAC also moves for judgment on the pleadings on the Ogle's Counterclaims against it.  Both

Carlisle and BAC raise similar arguments in support of their Motions and therefore will be

discussed together.  These arguments include: Mr. Ogle lacks standing to challenge the mortgage

assignments; and that the Ogle's have failed to sufficiently allege claims for violation of the

6

Racketeer Influenced and Corrupt Organizations Act, violation of the Fair Debt Collection

Practices Act, violation of the Real Estate Settlement Procedures Act, violation of the Truth in

Lending Act, violation of the Fair Credit Reporting Act, violation of the Ohio Consumer Sales

Practices Act, violation of the Ohio "Baby RICO" statute, unfair or deceptive acts or practices,

wrongful foreclosure, civil conspiracy, negligent servicing, breach of contract and the covenant

of good faith and fair dealing, slander of title, declaratory relief, and injunctive relief.  The Court

will address each in turn.

### 1.    Standing to Challenge the Validity of the Mortgage Assignments

BAC and Carlisle argue that they are entitled to judgment on the pleadings on the entirety

of Ogle's Third Party Claims against Carlisle and counterclaims against BAC because they are

predicated on allegedly "robosigned" mortgage assignment which they lack standing to

challenge.  The Court agrees.  Courts have routinely found that a debtor may not challenge an

assignment between an assignor and assignee.  *See Bridge v. Aames Capital Corp.*, 2010 U.S.

Dist. LEXIS 103154 (N.D. Ohio Sept. 29, 2010); *see also Livonia Property Holdings v.*

*Farmington Road Holdings*, 2010 U.S. Dist. LEXIS 47595 (E.D. Mich. May 13, 2010) (holding

that the plaintiff borrower did not have standing to dispute the validity of an assignment between

assignor and assignee because plaintiff was "a non-party to those documents."  Similarly, the

Sixth Circuit held in *Rogan v. Bank One*, 457 F.3d 561 (6th Cir. 2006) that the assignment was

immaterial "because neither the debtors nor the Trustee [were] parties to the [assignment]. ...

They lack standing to enforce it; they cannot claim to have relied on it."

Based on the well-established law in this area, the Ogles lack standing to challenge the

mortgage assignments.  Accordingly, their third party claims and counterclaims based on these

allegations that the assignments were fraudulent fail as a matter of law.

**2.      Failure to State a Claim**

Even if the Ogles had standing to challenge the validity of the mortgage assignments, all of their fifteen claims set forth in their third party complaint and counterclaim fail for the same reasons set forth in the Opinion and Order on Defendants' Motions to Dismiss in Case No. 2:11-cv-540.  The discussion and conclusions on those claims will be summarized below.

**a.      Violation of Racketeer Influenced and Corrupt Organizations Act**

The Ogles generally allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), asserting that BAC and Carlisle engaged in "mail or wire fraud."

To state a § 1962(c) RICO claim, a plaintiff must plead a person's "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  "Racketeering activity," "pattern of racketeering activity," and "enterprise" are defined terms under the RICO Act.  "Racketeering activity" means any of a number of listed acts or threats that are independently prohibited under state or federal law.  *See* 18 U.S.C. § 1961(1).  A "pattern of racketeering activity," in turn, "requires at least two acts of racketeering activity" occurring within specified time limits.  18 U.S.C. § 1961(5).  An "'enterprise' includes any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

BAC and Carlisle argue that the Ogles have failed to allege the existence of an enterprise to sufficiently allege a RICO claim.  The Ogles list a string of entities allegedly comprising the enterprise, and list supposed racketeering activities in which the enterprise purportedly engages.

However, they do nothing but make conclusory assertions of the existence of racketeering activity and an enterprise.  They fail to explain how the alleged members of the enterprise coordinated their conduct in such a manner to function as a "continuing unit."   Accordingly, the Ogle's RICO claim fails.  BAC and Carlisle are entitled to judgment on the pleadings on this claim.

### b.    Violation of Fair Debt Collection Practices Act

The Ogles allege that BAC violated the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692, *et seq.*  The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  The Ogles allege that BAC, in attempting to collect the mortgage, engaged in harassing or abusive conduct, in violation of § 1692d, made false or misleading representations, in violation of § 1692e, and attempted to use unfair or unconscionable means to collect the debt, in violation of § 1692f.

BAC, however, argues that it is not a 'debt collector' because it was collecting its own debt, and because BAC was assigned the debt prior to default.  Indeed, section 1692a(6) excludes, from the definition of "debt collector," those who attempt to collect a debt that they assert is owed to them.  *King v. CitiMortgage, Inc.*, No. 2:10-cv-01044, 2011 WL 2970915 (S.D. Ohio July 20, 2011) (Graham, J.) (citing *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003)).  Furthermore, the definition specifically excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent

such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). An entity that "services" the loan is treated as a "creditor" and generally is not subject to the FDCPA, when the debt was not in default at the time it was assigned. *See Johnson v. Sallie Mae Servicing Corp.*, 102 F. App'x 484, 487 (7th Cir. 2004); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985). Thus, "[w]here the debt was assigned for servicing before default of the loan, the assignee is exempt from the [FDCPA] because the assignee becomes a creditor and is collecting its own debt." *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-cv-273, 2008 WL 618788, *4 (S.D. Ohio Mar. 3, 2008) (Black, M.J.) (citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996)). The Amended Complaint specifically states that BAC was servicing the loan prior to the Ogles' decision not to continue to make payments, therefore BAC is not a "debt collector" under the FDCPA. *See* § 1692a(6). Accordingly, the Ogles' FDCPA claim fails and BAC and Carlisle are entitled to judgment on the pleadings on this claim.

### c. Violation of Real Estate Settlement Procedures Act

The Ogles allege the following violation of the Real Estate Settlement Procedures Act, 12 U.S.C. 2601, *et seq.* ("RESPA"): BAC and Carlisle failed, within 60 days of receiving the Ogles' "qualified written request" ("QWR"), to identify the beneficiary of the Ogles' payments and respond to their dispute in response. BAC and Carlisle argue that the Ogles have failed to state a RESPA claim because they fail to properly allege damages, all of their requests were timely responded to, and the QWR was correctly responded to as required by RESPA.

RESPA imposes certain duties on loan servicers. For example, § 2605 requires a loan servicer to take certain steps in response to a borrower's QWR for information relating to the

servicing of a loan.  12 U.S.C. § 2605(e).  When a loan servicer violates § 2605, the borrower is entitled to "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [§ 2605]."  12 U.S.C. § 2605(f)(1).  However, a plaintiff borrower, who cannot show actual damages as required by § 2605(f), fails to state a claim under RESPA as a matter of law.  *See, e.g., Ford v. New Century Mortgage Corp.*, 797 F. Supp.2d 862, 870 (N.D. Ohio 2011). Therefore, to withstand a Rule 12(b)(6) motion, the borrower must allege actual damages arising from the violation.  *Id.*

The Ogles fail to state a claim under RESPA because they do not sufficiently plead damages.  Although they generally state they are entitled to damages, they fail to allege how they suffered actual damages from any alleged breach of a duty under RESPA.  Therefore, BAC and Carlisle are entitled to judgment on the pleadings on the Ogles' claim under RESPA.

### d.      Violation of the Truth in Lending Act

The Ogles allege that BAC and Carlisle violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, by "failing to send a written notice to [Ogles] within 30 days after [Ogles'] mortgage loan was allegedly sold or otherwise transferred."  (Counterclaim at ¶ 148). BAC and Carlisle argue that they are entitled to judgment on this claim because it is barred by the statute of limitations.

Claims under the TILA are subject to a one year statute of limitations.  The TILA provides in pertinent part:  "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation[.]"  The party seeking to avoid the statute of limitations bears the

burden of proof. *Grand Rapids Plastics v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999). The TILA statute of limitations generally "begins running on the date of the occurrence of the violation, that is, 'when lender and borrower contract for the extension of credit.'" *Ford*, 797 F. Supp.2d at 868 (quoting *Wachtel v. West*, 476 F.2d 1062, 1065 (6th Cir. 1973)).

The Ogles closed on their loan in May 2005, and they had at least constructive knowledge that the servicing of their loan had transferred to BAC by the fall of 2009. BAC filed the original foreclosure action in March 2010. The Ogles filed their counterclaims and third-party complaint on August 17, 2011, which was beyond the one-year statute of limitations. Further, the Ogles do not allege any facts that would implicate the equitable tolling doctrine. Accordingly, the Ogles' TILA claim is time-barred and BAC and Carlisle are entitled to judgment on the pleadings on this claim.

### e. Violation of Fair Credit Reporting Act

The Ogles allege that BAC and Carlisle violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by falsely reporting negative information about the Ogles' loan to the credit report agencies. The Ogles generally allege that BAC and Carlisle failed to provide accurate information regarding their debt to credit reporting agencies pursuant to its duties under § 1681s-2(a). However, this portion of the FCRA does not create a private cause of action, as the FCRA expressly prohibits any private cause of action based on a violation of § 1681s–2(a). *See* 15 U.S.C. § 1681s–2(c); *see also Girgis*, 733 F. Supp.2d at 849 (noting that only government entities may enforce § 1681s-2(a)). Thus, insofar as the Ogles have alleged a FCRA claim for an alleged violation of § 1681s-2(a), the claim fails.

However, a consumer may recover damages for a willful violation of 15 U.S.C. §

12

1681s-2(b). *Bach v. First Union Nat'l Bank*, 149 Fed App'x 354, 358–59 (6th Cir. 2005). To bring a claim against a furnisher of information under § 1681s-2(b), the plaintiff must "show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed." *Downs v. Clayton Homes, Inc.*, 88 Fed. App'x 851, 853–54 (6th Cir. 2004). And the plaintiff must show that upon receiving this notice, the furnisher of information acted with a "reckless disregard" in performing its duties under § 1681s-2(b), which include conducting an investigation and reviewing any information provided by the consumer reporting agency. *See Boggio v. USAA Fed. Sav. Bank*, No. 1:10-cv-445, 2011 WL 3876525, *4 (S.D. Ohio Sept. 2, 2011).

Here, although the Ogles allege that they contacted a credit reporting agency and disputed the information provided by the BAC and Carlisle, they do not allege that BAC and Carlisle willfully violated the FCRA upon receiving notice from a credit reporting agency that the furnished information is disputed. Because an information furnisher's duties under § 1681s-2(b) only arise after it receives notice of a dispute from a credit reporting agency, the Ogles' failure to allege that the credit reporting agency notified BAC of the disputed information is fatal to their FCRA claim. *See Farris v. Morgan Stanley Dean Witter Credit Corp.*, No. 08–11851, 2010 WL 3023808, (E.D. Mich. July 29, 2010). Furthermore, the Ogles do not allege that BAC or Carlisle acted unreasonably upon receiving any notification of a dispute. Accordingly, BAC and Carlisle are entitled to judgment on the pleadings on the Ogles' FCRA claim.

### f.     Violation of Ohio Consumer Sales Practices Act

The Ogles allege that BAC and Carlisle violated the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01, *et seq.*, when it allegedly violated the FDCPA. BAC

and Carlisle argue that they are not suppliers within the meaning of the OCSPA.

The OCSPA prohibits unfair or deceptive consumer sales practices.  Specifically, Ohio Revised Code § 1345.02(A) provides:  "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction.  Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."  Thus, this legislation prohibits a "supplier" from committing "unfair or deceptive acts" in a "consumer transaction."  If one of these elements is not shown, then the claim under the OCSPA fails.

For the purpose of this statute, a "supplier" is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions[.]"  Ohio Rev. Code § 1345.01(C).  But if the consumer transaction is in connection with a residential mortgage, "supplier" does not include "an assignee or purchaser of the loan for value, except as otherwise provided in section 1345.091 of the Revised Code."  Under section 1345.091, an assignee or purchaser of the loan for value are subject to liability if the "violation was committed by the assignee or purchaser."  A "consumer transaction" includes transfers of goods and services generally but excludes transactions between financial institutions and their customers other than "transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers."  Ohio Rev. Code § 1345.01(A); *see Hammond v. Citibank, N.A.*, No. 2:10-cv-1071, 2011 WL 4484416, *8 (S.D. Ohio Sept. 27, 2011).

In this case, the Ogles' claim against BAC and Carlisle are in connection with their actions as mortgage loan servicers.  The Ogles do not allege that BAC and Carlisle were acting

14

as "loan officers, mortgage brokers, or nonbank mortgage lenders" in relation to the mortgage loan at issue.  Therefore, BAC and Carlisle do not qualify as "suppliers" as that term is defined for the purpose of the OCSPA.  Consequently, BAC and Carlisle are entitled to judgment on the pleadings on the Ogles' OCSPA claim.

### g. Violation of the Ohio "Baby RICO" Statute

The Ogles allege that BAC and Carlisle violated Ohio's Corrupt Practices Act ("OCPA"), Ohio Rev. Code § 2923.31 *et seq.*, which is patterned after the federal RICO Act. Ohio Revised Code § 2923.32 provides in part as follows:  "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."  Ohio Rev. Code § 2923.32(A)(1).  A person injured or threatened with injury by a violation of section 2923.32 may bring a civil action pursuant to section 2923.34.

To state a claim under the OCPA, the following elements must be pled with specificity: (1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity, and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise. *Kondrat v. Morris*, 692 N.E.2d 246, 253 (Ohio Ct. App. 1997).  In view of these requirements, a plaintiff that fails to plead the elements necessary to establish a RICO violation also fails to state a claim under the OCPA.  *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28, 32 (Ohio Ct. App. 1993); *see State ex rel. Fatur v. Eastlake*, No. 2009-L-037, 2010 WL 1254369, *5 (Ohio Ct. App. Mar. 31, 2010) (citing *Universal Coach*); *but see State v. Hicks*,

No. CA2002-08-198, 2003 WL 23095414, at *8 (Ohio Ct. App. Dec. 31, 2003) (rejecting the continuity requirement for establishing an OCPA pattern of corrupt activity).  Because the Ogles have failed to plead the necessary elements of a RICO claim, they also fail to state a claim under the OCPA.  Therefore, BAC and Carlisle are entitled to judgment on the pleadings on the Ogles' OCPA claim.

### h.     Unfair or Deceptive Acts or Practices

The Ogles allege that BAC and Carlisle violated Ohio Revised Code §§ 1345.02(A) and (F)(1), another OCSPA claim.  The Court has already determined that BAC and Carlisle are not "suppliers," which is one of the requirements under the OCSPA.  The Ogles have failed to provide any additional factual allegations that would support a claim under the OCSPA.  Therefore, BAC and Carlisle are entitled to judgment on the pleadings on this claim as well.

### i.     Wrongful Foreclosure

The Ogles assert a claim for wrongful foreclosure under Ohio law.  BAC and Carlisle argue that wrongful foreclosure is not a recognized cause of action in Ohio.  "Wrongful foreclosure" in Ohio "describes not a discrete claim with specific elements but a collection of challenges to a foreclosure action."  *Id.*; *see Wells Fargo Bank, N.A. v. Favino*, No. 1:10-cv-571, 2011 WL 1256771, at *12 (N.D. Ohio Mar. 31, 2011) (finding that "wrongful foreclosure" is not a "cause of action, only an affirmative defense").  Accordingly, BAC and Carlisle are entitled to judgment on the pleadings on the Ogles' wrongful foreclosure claim.

### j.     Civil Conspiracy

The Ogles allege that BAC and Carlisle and others conspired against them.  BAC and Carlisle argue that the Ogles fail to establish the elements of a civil conspiracy claim.  Under

16

Ohio law, the elements of civil conspiracy are:  (1) a malicious combination of two or more persons; (2) causing injury to person or property; (3) the existence of an unlawful act which is independent from the conspiracy itself; and (4) damages.  *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996).  Although the Ogles present a conclusory allegation regarding the existence of a civil conspiracy, they fail to allege sufficient facts in support of the elements of this claim.  Accordingly, BAC and Carlisle are entitled to judgment on the pleadings on the Ogles' civil conspiracy claim.

### k.    Negligent Servicing

The Ogles allege that BAC and Carlisle negligently serviced their loan by failing to identify the noteholder.  BAC and Carlisle argue that this claim fails because the Ogles cannot maintain a tort action based on a contract.  The Court agrees.  "A claim that a bank is negligently administering a loan is an action in contract and not a tort action, since any duties the bank has arise out of contract, from the framework of the loan agreement."  *Favino*, 2011 WL 1256771, at *14.  Further, the Sixth Circuit has held that "under Ohio law, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim."  *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981).

### l.    Breach of Contract and the Covenant of Good Faith and Fair Dealing

The Ogles allege a claim for breach of contract and breach of the covenant of good faith and fair dealing.  BAC and Carlisle argue that the Ogles failed to allege sufficient factual allegations in support of these claims.

In Ohio, a claim for breach of contract requires proof of four elements:  existence of a contractual relationship between the parties, performance under the contract by the party seeking

17

recovery for the breach, breach of the contract by the party against which relief is sought, and damages to the party seeking relief resulting from the breach. *Pavlovich v. National City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 957 (Ohio Ct. App. 2004)). And the duty of good faith and fair dealing is integral to any contract. *Krukrubo v. Fifth Third Bank*, No. 07AP-270, 2007 WL 4532689, at *5 (Ohio Ct. App. Dec. 27, 2007). Thus, a breach of covenant of good faith and fair dealing "does not stand alone as a separate cause of action from a breach of contract claim." *Westwinds Dev. Corp. v. Outcalt*, No. 2008-G-2863, 2009 WL 1741978, at *11 (Ohio Ct. App. June 19, 2009); *see Interstate Gas Supply, Inc. v.Calex Corp.*, No. 04AP-980, 2006 WL 328679, at *20 (Ohio Ct. App. Feb. 14, 2006) ("an allegation of a breach of the implied covenant of good faith cannot stand alone as a separate cause of action from a breach of contract claim").

Here, there is no dispute that the Ogles have not performed as required under the Note and Mortgage. The Ogles admittedly stopped making mortgage payments in September 2009, when they say they learned that BAC was servicing the loan. The Ogles have therefore failed to plead performance and accordingly, have failed to adequately plead a breach of contract claim. *See Wells Fargo Bank, N.A.*, 2011 WL 1256771, at *9 (finding that failure to make mortgage loan payments prevents party from proving his own performance in breach of contract action against the lender seeking to foreclose on the loan). The breach of covenant of good faith and fair dealing fails for the same reasons. Accordingly, BAC and Carlisle are entitled to judgment on the pleadings of these claims.

### m.     Slander of Title

The Ogles allege that the mortgage assignments and the allonge constitute a slander of

their title.

In Ohio, "[s]lander of title is a tort action which may be brought against any one who falsely and maliciously defames the property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss." (Internal quotation marks omitted) *Green v. Lemarr*, 744 N.E.2d 212, 224 (Ohio App. Ct. 2000). Thus, to recover for slander of title in Ohio, a plaintiff must prove special damages. *See id.* at 226. Under the Federal Rules of Civil Procedure, special damages must be alleged with specificity. Fed. R. Civ. P. 9(g).

Though the Ogles allege that the mortgage assignments and allonge are not valid, they do not allege facts showing that BAC and Carlisle acted with malice, or that their actions proximately caused actual pecuniary loss. Thus, the Ogles fail to state a claim of slander of title and BAC and Carlisle are entitled to judgment on this claim.

### n.     Declaratory Relief

The Ogles seek an order declaring that BAC has no interest in the mortgage or real property that is the subject of the foreclosure action. To obtain declaratory relief relating to BAC's attempt to collect on a debt, the Ogles must show that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

This Court previously held that the Ogles' declaratory judgment claim fails because they are not entitled to such relief as a matter of law. This remains true with respect to the Ogles' counterclaim. Not only do the Ogles not have standing to challenge the validity of assignments, they assume an injury where none exists. As noted in the *Bridge* case: "regardless of the

outcome of this litigation, [borrower] is still in default on her mortgage and subject to foreclosure.  As a consequence, [borrower] has not suffered any injury as a result of the assignment . . . nor is there any likelihood that [borrower's] requested relief will prevent her alleged injury."  Accordingly, the Ogles are not entitled to the requested declaratory relief as a matter of law.

### o.    Injunctive Relief

The Ogles seek injunctive relief from any foreclosure action filed against them in connection with the loan at issue.  Because the Ogles have failed to sufficiently plead any claims in their counterclaim or third party complaint, their request for injunctive relief also fails.  BAC and Carlisle are therefore entitled to judgment on this claim as well.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Carlisle, McNellie, Rini, Kramer, & Ulrich, Co, LPA's Motion for Judgment on the Pleadings on all of Plaintiffs' claims brought in Case No. 2:11-cv-540.  Case No. 2:11-cv-540 is hereby dismissed.

Additionally, the Court **GRANTS** Carlisle, McNellie, Rini, Kramer, & Ulrich, Co. LPA's Motion for Judgment on the Pleadings and Bank of America's Judgment on the Pleadings on all of the Ogles' Counterclaims and Third-Part Claims against them.  Accordingly, the Ogles' counterclaim and third-party complaint are dismissed.  Based on the aforementioned, the Ogles' Motion for Default Judgment and Motion for Judgment on the Pleadings are denied as moot.

Additionally, the Ogles' Motion to Strike, document 63, is also moot.

The Clerk shall remove Documents 59 and 65, in Case No. 2:11-cv-540, from the Court's pending motions list.  Additionally, the Clerk shall remove this case from the Court's pending

cases list.   The Clerk shall also remove Documents 44, 53, 54, 55, and 63 in Case No. 2:11-cv-745 and enter judgment for BAC and Carlisle on the Ogles' counterclaim and third-party complaint.

**IT IS SO ORDERED.**

                                        *s/ George C. Smith*                   
                                        **GEORGE C. SMITH, JUDGE**
                                        **UNITED STATES DISTRICT COURT**